# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| SHARON CELENTANO, : | |
|     **Plaintiff** : | **CIVIL ACTION NO. 1:17-1590** |
| v. : | |
| ANDREW M. SAUL[1], : | **(JUDGE MANNION)** |
| **Commissioner of Social Security,** | |
| : | |
|     **Defendant** | |
| : | |

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§401-433. The court has jurisdiction pursuant to 42 U.S.C. §405(g). Currently before the court are the parties' cross-motions for summary judgment. (Doc. 12, Doc. 14). For the reasons set forth below, the plaintiff's motion will be denied and the defendant's motion will be granted. Thus, the court will affirm the Commissioner's decision.

---

[1]Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is automatically substituted as the defendant in this action. See Fed.R.Civ.P. 25(d).

## I. BACKGROUND[2]

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that plaintiff meets the insured status requirements of the Act through December 31, 2020. In order to establish entitlement to disability insurance benefits, the plaintiff was required to establish that she suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

The plaintiff was born on March 26, 1970, and was 44 years old, defined as a younger individual, on her alleged disability onset date. The plaintiff has a high school education and is able to communicate in English. Her past work includes positions as an auto assembler, line cook and school bus driver. The plaintiff alleges that June 13, 2014, she became disabled and unable to work.

The plaintiff protectively filed a claim for DIB on June 25, 2014, and a claim for SSI on June 30, 2014, alleging disability commencing on June 13,

---

[2]The court notes that since the ALJ and the parties have stated the medical history of plaintiff in their respective filings, the court will not fully repeat it herein. Rather, the court discusses the plaintiff's medical history only to the extent it is relevant to the issues raised in this appeal.

2014 in both applications. The agency initially denied the plaintiff's applications on August 26, 2014. The plaintiff filed a request for reconsideration and, on March 20, 2015, the agency denied her request. The plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 18, 2017. The plaintiff was represented by counsel at her hearing. In addition to the plaintiff's testimony, the ALJ heard the testimony of a vocational expert ("VE").

The ALJ issued a decision on March 10, 2017, finding that the plaintiff was not disabled within the meaning of the Act at any time from June 13, 2014, the alleged onset date of disability, through the date of his decision. The plaintiff filed a request for review and, on September 20, 2017, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. Since the plaintiff exhausted her administrative remedies, she initiated the present action on November 6, 2017, appealing the final decision of defendant. (Doc. 1).

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not

mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In the present case, there are cross-motions for summary judgment. "In Social Security cases, the substantial evidence standard applies to motions

4

for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c)." Antoniolo v. Colvin, 208 F.Supp.3d 587, 595 (D.Del. 2016) (citing Woody v. Sec'y of the Dep't of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir.1988)).

## III. DISABILITY EVALUATION PROCESS

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents her from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. §423(d)(2)(A)).

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also Plummer, 186 F.3d at 428. If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20

5

C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process to conclude that the plaintiff was not disabled within the meaning of the Act. The ALJ found that the plaintiff had engaged in substantial gainful activity since June 13, 2014, her alleged onset date. However, the plaintiff had a continuous 12-month period where she had not engaged in substantial gainful activity. The ALJ therefore addressed the periods since her alleged onset date when she had not engaged in substantial gainful activity. Next, the ALJ determined that plaintiff suffered from severe impairments, including chronic obstructive pulmonary disease[3], unspecified diffuse connective tissue disease[4], and major depressive disorder. The ALJ determined that the

---

[3]Despite this diagnosis and medical advice to the contrary, the record demonstrates that the plaintiff continues to smoke approximately 1 ½ packs of cigarettes per day.

[4]This was the plaintiff's diagnosis after multiple sclerosis, lupus, rheumatoid arthritis, fibromyalgia and Sjogren's syndrome were ruled out.

6

plaintiff's sleep apnea, hypertension and mild degeneration in her cervical and thoracic spine and sacroiliac joints were non-severe impairments. Considering the medical evidence of record, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, specifically considering listings 3.02, 14.06 and 12.04.

The ALJ found that plaintiff had the RFC to perform sedentary work except that she could occasionally climb ramps, stairs, ladders, ropes and scaffolds, occasionally balance, kneel, crouch or crawl, and never stoop; she could have occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gases, poor ventilation and hazards; and she was limited to simple, unskilled tasks with no fast pace or strict production requirements, in a stable work environment with only occasional changes and occasional interaction with coworkers and the public. With these limitations, the ALJ found that the plaintiff was unable to perform any of her past relevant work. However, given the plaintiff's age, education, work experience and residual functional capacity, and considering the testimony of the VE, the ALJ found that there were jobs which existed in significant numbers in the national economy that the plaintiff could perform.

## IV. DISCUSSION

The only issue raised by the plaintiff in her appeal is that the ALJ improperly evaluated the medical opinion evidence in fashioning his RFC assessment. Specifically, the plaintiff argues that her treating sources for her physical impairments, Dr. Nazia Hasan and Linda Ashley, NP, provided opinions (Tr. 646-47, 591-92) which demonstrate that her physical limitations are more limiting than found in the ALJ's RFC assessment and that her treating sources for her mental impairments, Heather Frye, APRN, and A. Lynn Banks, LCSW, also provided opinions (Tr. 595-600, 603-08) establishing greater mental limitations than found in the ALJ's RFC. As relief, the plaintiff seeks to have this court reverse the Commissioner's decision and remand the case to the Commissioner for further proceedings.

When a RFC assessment conflicts with opinions of medical sources, the ALJ must provide reasons for rejecting the opinions which must ". . . always (be) good reasons . . . (and) . . . contain specific reasons for the weight given to the treating sources' medical opinion, supported by the evidence in the case record . . ." See 20 C.F.R. §§404.1527, 416.927(c). Factors to be considered include examining relationship, treating relationship, supportability, consistency and specialization. Id. However, not all of these factors need be discussed when weighing medical source opinions. Id. See also 56 Fed. Reg. at 36936 (1991) (final rules) ("not every factor will apply in every case" and

"certain factors . . . will sometimes take precedence over other factors.").

Although opinions of treating sources are entitled to substantial weight, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Rather, the determination of an individual's RFC is reserved for the Commissioner. See 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2). In addition, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with other substantial evidence in [the] case record.'" See Scouten v. Comm'r of Soc. Sec., 722 Fed. Appx. 288, 290 (3d Cir. 2018)). The role of the court is only to determine whether there is substantial evidence to support the ALJ's weighing of medical source opinions, not to re-weigh the medical evidence. See Ransom v. Berryhill, 2018 WL 3617944, at *7 (D.Del. July 30, 2018) (citing Gonzalez v. Astrue, 537 F.Supp.2d 644, 659 (D.Del. 2008)).

In this case, the plaintiff argues that the ALJ failed to properly consider the medical source statement of Dr. Hasan, completed on December 27, 2016, wherein Dr. Hasan provides, in part, that the plaintiff has various restrictions with respect to lifting, standing and walking due to weakness and pain. In addition, Dr. Hasan provides that the plaintiff needs a sit/stand option and is required to lay down for 15 minutes every 1-2 hours. The plaintiff was

9

further noted to rarely be able to climb steps or ladders, bend, kneel, stoop, crouch or balance. Based upon these limitations, Dr. Hasan opined that the plaintiff is incapable of performing light or sedentary work activity. (TR. 646-47).

Upon review, the ALJ considered the medical assessment statement of Dr. Hasan. In doing so, the ALJ acknowledged Dr. Hasan as the plaintiff's primary care physician, but gave no weight to the opinion expressed on the form completed by Dr. Hasan noting that Dr. Hasan's primary care records were inconsistent with the limitations set forth on the form, instead reflecting that the plaintiff had a normal gait, station and strength which would not produce the extreme limitations set forth on the form. Moreover, the ALJ noted that there were no objective findings contained in the assessment to support the limitations stated therein. As to the plaintiff's subjective complaints, these alone are insufficient to establish disability. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

As to the ALJ's consideration of Dr. Hasan's assessment, the court notes initially that it is well settled that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Spallone v. Berryhill, 2018 WL 2771581, at *9 (M.D. Pa. Apr. 3, 2018) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)), *report and recommendation adopted*, 2018 WL 2770646 (M.D. Pa. June 8, 2018). Thus,

10

the ALJ was not required to give the form report any weight. Moreover, an ALJ "may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted." Morris v. Barnhart, 78 Fed.Appx. 820, 824-25 (3d Cir. 2003). The only reasoning provided on the form for Dr. Hasan's findings was the plaintiff's subjective "feelings" which were not supported by the other evidence of record. Thus, the ALJ was justified in not affording any weight to the medical assessment form completed by Dr. Hasan.

With respect to the opinion of Linda Ashley, NP, the plaintiff's treating rheumatology source, the plaintiff argues that, on September 1, 2016, NP Ashley prepared a medical source statement wherein she indicated that the plaintiff had lifting and sitting limitations due to back pain. NP Ashley further indicated that the plaintiff could only stand/walk for 15 minutes at one time, for a total of only 1 hour in an 8 hour workday due to weakness. NP Ashley indicated that the plaintiff would need to lie down on an hourly basis and could only occasionally climb steps, kneel, stoop and balance, and could only rarely climb ladders and crouch. Based upon these limitations, NP Ashley opined that the plaintiff would be unable to perform sedentary or light work activity.

Again, the ALJ considered the opinion of NP Ashley as the plaintiff's rheumatology nurse and, for the same reasons given with respect to Dr.

11

Hasan, gave no weight to the opinion. Moreover, the ALJ noted that rheumatology records did not support the limitations indicated in NP Ashley's statement which was considered in accordance with SSR 06-3p[5]. Consistently, the ALJ noted that the plaintiff was found to have normal sensation, normal range of motion and normal muscle tone and strength. For the reasons set forth with respect to the opinion of Dr. Hasan, the court finds that the ALJ was justified in affording no weight to the medical source statement of NP Ashley.

In relation to the plaintiff's physical limitations, in addition to the above treating source opinions, the ALJ considered the state agency physical assessments indicating a capacity for light work. The ALJ afforded these assessments little weight, as he found that the medical records supporting some postural and environmental limitations, as well as pain and fatigue, demonstrated that the plaintiff was more limited.

The plaintiff next argues that the ALJ erred in failing to give any weight to the opinion of Heather Frye, APRN, who completed a mental health questionnaire on September 1, 2016, in which she indicated that the plaintiff had been diagnosed with major depressive disorder, recurrent, severe without psychotic features. APRN Frye listed the plaintiff symptoms, indicating that

---

[5]Social Security Ruling 06-3p clarifies how the Commissioner considers opinions from sources who are not "acceptable medical sources."

they have responded to medication, but that she was not in remission. APRN Frye indicated that the plaintiff had "poor" mental ability in maintaining attention for two hour segments, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods and accepting instructions and responding appropriately to criticism from supervisors. She noted that the plaintiff had "seriously limited" mental ability in remembering work-like procedures, making simple work-related decisions, asking simple questions or requesting assistance, responding appropriately to routine change in a work setting and dealing with normal work stress. "Marked" difficulties were noted in maintaining concentration, persistence or pace which APRN Frye opined would likely result in the plaintiff missing more than 4 days of work per month making it hard for the plaintiff to work a full-time job on a sustained basis.

In considering the questionnaire completed by APRN Frye, the ALJ found the information provided was internally inconsistent indicating at one point that the plaintiff's thought processes were logical and goal directed, yet later indicating that the plaintiff had difficulty thinking or concentrating. Moreover, the ALJ noted that APRN Frye's treatment notes were inconsistent with the questionnaire in that there was nothing documented which would indicate that the plaintiff would likely miss four days of work per month. While

there were occasional notations of depressed mood and constricted affect, the plaintiff's mental status examination findings were otherwise unremarkable. The plaintiff herself noted that she was feeling better in July and September 2015 and it was noted that she had normal mood with congruent affect. In February 2016, the plaintiff had returned to work as a school bus aide. Later treatment notes indicate that the plaintiff had normal mental status examination findings including memory, affect and mood. In light of the internal inconsistencies, as well as inconsistencies with the other evidence of record, the court finds the ALJ was justified in affording no weight to APRN Frye's questionnaire responses.

The plaintiff argues that the ALJ also erred in affording no weight to the opinion of A. Lynn Banks, LCSW, her treating therapist. Like APRN Frye, LCSW Banks prepared a medical impairment questionnaire on December 1, 2016, wherein LCSW Banks indicated that the plaintiff had "no useful ability to function" in the areas of understanding and remembering very short and simple instructions, maintaining attention for two hour segments, maintaining regular attendance and being punctual with customary tolerances, performing at a consistent pace without an unreasonable number and length of rest periods, dealing with normal work stress and being aware of normal hazards and taking appropriate precautions. It was opined that the plaintiff had "poor" mental ability in the areas of remembering work-like procedures, carrying out

very short and simple instructions, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, responding appropriately to workplace change and setting realistic goals or making plans independently of others. LCSW Banks opined that the plaintiff had marked limitations in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. She opined the plaintiff would likely miss more than four days of work per month due to her impairments and indicated that the plaintiff could not work full time due to "depression, difficulty focusing, short term memory impairment, loss of energy, feelings of hopelessness, helplessness, loss of appetite, extreme fatigue, hypersomnia, social withdrawal and suicidal ideation."

In considering LCSW Banks's questionnaire, the ALJ noted that her contemporaneous treatment notes did not support the limitations provided in the questionnaire. The ALJ noted that the plaintiff's session notes contained more physical symptoms and observations than mental status deficiencies. Moreover, the ALJ found that, even when the plaintiff is noted to be depressed or anxious, LCSW Banks indicates that her thought process and content is normal and that she has no delusions or hallucinations.

In addition to the above treating source opinions, the ALJ considered a statement dated May 2014 from Dr. Chua, a psychiatrist, reflecting that the

15

plaintiff was limited to the extent that she could not work as a school bus driver and assigning the plaintiff a GAF score of 60, the highest functioning level of "moderate" symptoms or functional impairment. The ALJ gave Dr. Chua's statement significant weight to the extent that it was consistent with the other evidence of record, but noted that there were not treatment notes from Dr. Chua in the record. Moreover, only some weight was afforded to the consultative psychological evaluation performed in conjunction with a prior application for benefits which demonstrated that the plaintiff had adequate attention, concentration and memory, as the ALJ found that subsequent medical evidence supported more than the mild limitations found on the functional capacities evaluation form completed at the time. The ALJ afforded great weight to the state agency mental assessments stating that the record supported the limitations indicated in those assessments consistent with the plaintiff's paragraph B functional limitations. Although the state agency psychiatric review technique was based upon the former mental listings, the ALJ gave them some weight in establishing the plaintiff's moderate limitations.

As set forth above, the record reflects that the ALJ recognized the plaintiff's treating sources, but gave no weight to their opinions because they were internally inconsistent, inconsistent with their own treatment notes, and inconsistent with the other evidence of record. The plaintiff argues that by rejecting the opinions of her treating sources, the ALJ substituted his own lay

16

opinion for that of the experts. If an ALJ chooses to reject a treating source's assessment, he may do so only on the "basis of contradictory medical evidence" not because of his or her "own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted). Here, there is no indication that the ALJ substituted his own lay opinion for the opinions of the plaintiff's treating physicians, but rather afforded their opinions no weight because of internal inconsistencies and inconsistencies with the other evidence of the record as a whole.

The plaintiff also argues that the ALJ erred in rejecting the treating sources' assessments to the extent they were not supported by accompanying treatment records arguing that medical providers do not typically include functional assessments of a claimant's work related limitations in their office notes, as medical records are not prepared in anticipation of litigation. Arguments such as this have been found unavailing where the medical records speak for themselves. See e.g., Grier v. Berryhill, 2019 WL 2870728, at *9 n.11 (D.De., July 3, 2019). As outlined by the ALJ, the medical records in this case speak for themselves.

Finally, the plaintiff argues that the ALJ erred in failing to "accept and include or reject and explain" the limitations opined by Dr. Chua, who indicated that the plaintiff could not work as a school bus driver and assessed the plaintiff with a GAF of 60 to which the ALJ gave significant weight. The

record reflects that the ALJ considered the statement of Dr. Chua and gave his conclusions weight to the extent they were supported by the other evidence of record. However, no treatment notes supporting Dr. Chua's conclusions were placed in the record. Therefore, the ALJ need not have considered those conclusions which were not supported by the record.

## V. CONCLUSION

For the reasons stated above, the court finds that the decision of the Commissioner denying plaintiff's applications for DIB and SSI is supported by substantial evidence. Thus, the plaintiff's motion for summary judgment, **(Doc. 12)**, is **DENIED**, and the defendant Commissioner's motion for summary judgment, **(Doc. 14)**, is **GRANTED**. Accordingly, pursuant to 42 U.S.C. §405(g), the decision of the Commissioner will be **AFFIRMED** and the plaintiff's **APPEAL**, **(Doc. 1)**, will be **DENIED**. An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 14, 2019**

17-1590-01.wpd